XAVIER BECERRA
Attorney General of California
DAMON G. MCCLAIN
Supervising Deputy Attorney General
WILLIAM P. BURANICH
Deputy Attorney General
State Bar No. 144650
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3558
  Fax:  (415) 703-5843
  E-mail:  William.Buranich@doj.ca.gov
*Attorneys for Respondents California Department of Corrections and Rehabilitation Office of Internal Affairs, California Department of Corrections and Rehabilitation Office of the Ombudsman, California Attorney General Xavier Beccera, California Governor Gavin Newsom, and the Office of the Inspector General*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **EEON F.K.A. BRETT JONES,**<br><br>                              Petitioner,<br><br>        v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,**<br><br>                              Respondents. | 4:19-mc-80288-KAW<br><br>**OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD**<br><br>Judge:           Hon. Kandis A. Westmore<br><br>Action Filed:  December 6, 2019 |

The California Department of Corrections and Rehabilitation Office of Internal Affairs, California Department of Corrections and Rehabilitation Office of the Ombudsman, California Attorney General Xavier Beccera, California Governor Gavin Newsom, and the Office of the

1

1  Inspector General, labeled as "respondents" in the moving papers, oppose the motion to confirm a
2  purported arbitration award in the above referenced matter.

3  **INTRODUCTION**

4      The motion to confirm an arbitration award appears to be the final step in an elaborate
5  scheme, one that the named "respondents" had no knowledge of before the filing of this motion.
6  While the filing is hardly a paradigm of clarity, it appears that the moving party (or parties) claim
7  to have somehow bound respondents to the terms of a "contract" by sending them a proposal and
8  treating their silence as acceptance.  More preposterous still, this "contract" was apparently only
9  ever provided to one of the respondents.  The moving party asserts that this was adequate because
10 respondents agreed to terms—terms that they never even had a chance to review—in the
11 purported "contract," which provides that service on but one of the respondents constitutes
12 service on them all.  And, of course, it is asserted that each party, by its silence in response to a
13 document they never received, agreed to arbitration.

14     This scam was facilitated, if not actually engineered, by an entity with the ironic name of
15 Sitcomm Arbitration Association.  There are numerous examples in court dockets of similar
16 schemes in which Sitcomm played a similar role, fabricating the same sorts of "contracts" and
17 subsequently issuing arbitration awards under those fake agreements.  One federal judge in the
18 Northern District of Oklahoma characterized Sitcomm's documents as "a bizarre jumble of
19 inconsistent, nonsensical word salad" and "uninformative blatherskite." *U.S. Bank Nat'l Ass'n v.*
20 *Nichols*, No. 19-cv-482, 2019 WL 4276995 (N.D. Okla. Sept. 10, 2019); (Decl. Buranich Ex. O.)

21     Another federal judge in the Eastern District of Texas concluded that Sitcomm "does not
22 appear to be a valid entity of arbitration" and vacated the arbitration award granted to the
23 plaintiffs after determining that it "was procured through fraud." *Kalmowitz v. Federal Home*
24 *Mortgage Corporation*, No. 19-mg-10, 2019 6249298 (E.D. Texas Oct. 22, 2019); (Decl.
25 Buranich Ex. N.)

26     The same analysis and ruling is appropriate in this instance.  The "respondents" never
27 entered into any binding contract with the moving parties, never agreed to arbitrate any issue,
28

never actually arbitrated any issue, and are not subject to the bogus arbitration award that has been presented to this court.

## ARGUMENT

The motion to confirm the arbitration award should be denied because the "award" is invalid, the named respondents never agreed to arbitrate any issues with the moving parties, and the whole filing appears to be a scam and attempted fraud on the Court.

### I. THE PURPORTED PARTIES ARE VAGUE AND UNCERTAIN.

To begin with, the motion to confirm an arbitration award is captioned as having involved at least three persons or entities as moving parties. The first is someone calling himself Eeon (formerly known as Brett Jones). That individual, so far as respondents are aware, is still known as Brett Jones, and is currently incarcerated at the California Institution for Men in Chino, California. (Decl. Buranich, ¶ 3, Ex. A.)

In addition to Mr. Jones, the caption includes something labeled "the custody class." What this refers to is unclear. The papers make no reference to any class action proceeding, nor do they indicate that any such group was ever certified as a class by any valid tribunal. Thus, as to this entity, the court is being asked to confirm an award in favor of something that does not appear to exist.

The final persons or entities seeking a portion of the purported $600 Million award are identified simply as "et al." It is difficult to see how the court could award any amount to such a vaguely defined party or who would be able to utilize such an order to collect.

### II. NO ENFORCEABLE CONTRACT TO ARBITRATE EXISTS AND THE PURPORTED ARBITRATION AWARD IS THEREFORE INVALID.

#### A. There is no evidence that most of the responding parties were even aware of the purported "contract" to arbitrate or the arbitration.

Parties cannot be compelled to arbitrate absent a contract in which they agreed to do so. *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299. ("Arbitration is strictly a matter of consent.") Here, there is no evidence in the moving papers that any respondent was ever provided with the purported contract, much less that any party agreed to such a contract. The responding parties are aware that at least one copy of the "contract" included a proof of service through the U.S. Postal

1  Service on August 21, 2019.  (Buranich Decl., ¶ 4, Ex. B.)  That proof of service includes
2  tracking numbers for postal shipping to each of the listed parties.  (*Id*.)  But according to the
3  United States Postal Service website, although those tracking numbers and labels were generated,
4  nothing was ever actually submitted for delivery that used them.  (*Id*., ¶ 4-9, Exs.B-F.)  Thus, that
5  proof of service and those tracking numbers fail to demonstrate that the "contract" was ever
6  actually mailed to anyone.

7  The responding parties concede, however, that one of them received a copy of the proposed
8  "contract."  Specifically, the Office of the Inspector General (OIG) received the document on
9  August 29, 2019.  Although the language of the document was mostly incoherent, OIG was able
10 to discern that some of the language referenced prison issues and further noted that it was sent to
11 the OIG by a state prison inmate.  Based on these facts, OIG staff responded on September 16,
12 2019, advising Jones that he should attempt to resolve any issues with the California Department
13 of Corrections and Rehabilitation (CDCR) through formal administrative processes provided by
14 CDCR.  (*Id*., ¶ 10, Ex. G.)

15 OIG later received a "Notice of Arbitration Hearing" from Sitcomm Arbitration
16 Association.  (*Id*., ¶ 11, Ex. H.)  On September 20, 2019, OIG wrote to Sitcomm, advising that
17 OIG had never entered into any agreement to arbitrate any matter with Jones, and specifically
18 pointed out that OIG's mere receipt of a proposed "contract" document did not automatically
19 create such an agreement.  (*Id*., ¶ 12, Ex. I.)  OIG further advised Sitcomm that OIG had not
20 contracted with Sitcomm for arbitration services, OIG did not consent to Sitcomm's jurisdiction,
21 and OIG would not participate in any purported arbitration proceeding.  (*Id*.)

22 The next item received by OIG was a $2,500 bill from Sitcomm for an arbitration that
23 allegedly took place on September 30, 2019.  (*Id*., ¶ 13, Ex. J.)  Once again, OIG advised
24 Sitcomm that it had never agreed to arbitrate, had not agreed to Sitcomm as an arbitrator, and
25 would not be paying the invoice for arbitration services.  (*Id*., ¶ 14, Ex. K.)

26 Respondents CDCR Office of Internal Affairs and the Office of Governor Gavin Newsom
27 also received invoices for arbitration services from Sitcomm.  (*Id*., ¶ 15, Exs. L and M.)  No other
28 respondent did, and no respondent other than OIG was ever provided with any other documents.

4

None of the respondents was ever provided a copy of the award until it was filed with the court in connection with this motion to confirm it.

Jones's seeming nonchalance about failing to provide the "contract" to anyone other than OIG appears rooted in a provision in the purported contract in which it is unilaterally asserted that all defendants are considered agents of one another and that service upon one would constitute service on them all. (ECF No. 1 at 12, ¶ 4.017.1.) Sitcomm also seemed to rely on that provision when it only notified OIG of the upcoming arbitration. The only divergence from this approach by Sitcomm was when it sent its bills for arbitration services—multiple parties received an invoice for the amount of $2,500.

Thus, there is no evidence that any respondent entered into a contract to arbitrate any dispute with the moving parties, that any respondent was obligated to participate in the invalid arbitration, or that any party did participate in the invalid arbitration.

> **B. Even if it were true that the responding parties were all mailed a copy of the proposed "contract" for arbitration, their silence or inaction would not have constituted acceptance of any proposed contract terms.**

Attached to the motion, at ECF No. 1, pp. 7-25, is a nineteen page document captioned "Conditional Acceptance Performance Contract, Binding and Irrevocable, Coupled with an Interest." This bizarre document appears to be the foundation upon which the moving parties rest their claim.

It begins with an assertion that there exists a "relationship" between the parties under California Code of Regulations, title 15. Title 15 governs the operation and administration of California's prison system. The contention that those regulations create some sort of relationship between the parties appears designed to support an argument based on certain California case law that provides an exception to the rule that silence cannot serve as acceptance in the formation of a contract. This argument fails.

The general rule in California is that a contract may not be created by deeming an offeree's silence to be acceptance of the proposed terms. *Sorg v. Fred Weisz & Associates*, 14 Cal. App. 3d 78, 81 (1971) ("The tactic of attempting to create a contract . . . on the theory that silence and inaction would constitute acceptance, has been consistently rejected by the courts.") "An offeror

has no power to cause the silence of the offeree to operate as an acceptance when the offeree does not intend it to do so." (1 Corbin on Contracts (rev. ed.1993) § 3.19, p. 407.)

There are exceptions to this rule that generally only arise in situations involving the commercial sale of goods where the parties are already in contract and future transactions are governed by their previous course of dealing. *See* 1 Witkin, Summary of Cal. Law (11th), Contracts § 194. No such relationship is created by title 15. Although some of the regulations in title 15 concern the relationship between prisoners and state officials (e.g., "Prisoner means a person in custody of the Secretary and not paroled." Cal. Code Regs., tit. 15, § 3000), this relationship is not contractual in nature and consists of no previous course of contractual or commercial dealing that would except it from the general rule that the silence of the offeree does not operate as an acceptance of the terms of a contract.

Thus, there was no agreement between any of the respondents and Jones, in as much as a contract cannot be formed by a unilateral proposal in which silence is deemed to be assent to the terms of the agreement, especially if that party is never provided a copy of the contract that it supposedly agreed to by its silence. Thus, the Court should deny the motion to confirm the invalid arbitration award.

**C.    The Court should vacate the bogus arbitration award under the Federal Arbitration Act.**

The Federal Arbitration Act permits courts to vacate arbitration awards under particular statutory grounds, including when an award was procured by fraud or undue means, when an arbitrator is corrupt or partiality is evident, when an arbitrator is guilty of misbehavior by which the rights of any party have been prejudiced, or where arbitrators exceed their powers. 9 U.S.C. § 10. The Court should not only deny the motion to confirm the arbitration award, it should vacate the bogus award under these provisions of the Federal Arbitration Act.

Despite being advised of the facts and legal rules demonstrating that there was no valid agreement to arbitrate, Sitcomm proceeded to issue an arbitration award and invoices for arbitration services. These sorts of scams—the creation of bogus, unilateral contracts with which unsuspecting parties are deemed to have agreed by their silence, and the subsequent arbitration of

frivolous claims under these invalid agreements—appear to be the business of Sitcomm. A number of examples of this practice, all involving "conditional acceptance agreements," to which parties are deemed to acquiesce by their silence, and the subsequent arbitration awards rendered by Sitcomm are attached for the court's review. (Buranich Decl., ¶ 19-19, Exs. N-Q.)

As at least one court has observed:

> "The purported arbitration award is unlike any other this Court has ever seen. It is devoid of any specific fact-finding. While it references a contract dated December 20, 2018, there is no actual discussion of what its terms are, nor does it recite what the consideration or subject matter of the purported contract was, whom the specific parties to the contract were, whether they actually executed any document and, if so, when, and it does not address a method of service or notice, if any, that was given to any of the 'Respondent(s).' The only 'terms' of the 'contract' that are cited are the same 'terms' as those in the purported unilateral 'conditional acceptance' 'contract template' that Sitcomm Arbitration Association makes available on its own website. The arbitrator found that the respondents, through "tacit acquiescence' to an unspecified 'counter offer' or 'conditional acceptance,' gave the Nichols the right to enforce a 'self-executing binding contract coupled with interests,' which 'stands as irrevocable.' Most of the purported arbitration document appears directed towards convincing any court that the award is legitimate and that a court, when requested, must confirm it."

*U.S. Bank v. Nichols*, USDC Northern District of Oklahoma case no. 10-CV-482-JED-FHM, September 10, 2019. (ECF No. 7.) (Buranich Decl., Ex. __.) At least one other court took it one step further, concluding that Sitcomm's activities constituted fraud:

> "SLS argues that Plaintiff's arbitration award must be vacated under 9 U.S. C. § 10(a)(1) because it was procured through fraud. The court agrees. The purported arbitration agreement and award do not appear to have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration."

*Kalmowitz v. Federal Home Mortgage Corporation* 2019 WL 6249298 at *2.

In considering the same type of documents as the "Conditional Acceptance Performance Contract" and arbitration award at issue in the present case, the *Kalmowitz* court observed "these documents do not support the existence of any valid agreement between [the parties] to arbitrate, any proof of a legitimate arbitration proceeding, or any legal theories upon which Plaintiffs could claim a right to arbitration with [defendant]." *Id*. at *3. As to the purported "contract," at issue in the *Kalmowitz* matter, the court concluded "[t]he whole of the 22-page document, drafted with repetitive, nonsense legalese, contains no factual or legal conclusions from which this Court could deduce the existence of a valid contract, let alone a valid agreement to arbitrate." *Id.*

The fraudulent nature of this entire operation, and of the arbitration "award" this court is being asked to affirm (in the amount of $600 Million) is manifest. The motion should be denied and the purported award vacated under the Federal Arbitration Act. 9 U.S.C. § 10.

**CONCLUSION**

None of the named respondents ever agreed to arbitrate any dispute with the moving parties. Despite these facts, Sitcomm, which appears to be in the business of facilitating these types of schemes, issued an arbitration award in the amount of $600 Million. The entire enterprise reeks of underhandedness.

Not only should the motion to affirm be denied, the court should declare that no valid and enforceable contract to arbitrate existed between the moving parties and the named respondents, and that the "arbitration award" was issued without authority, consent, or jurisdiction, and is therefore void and unenforceable as a matter of law. The court should issue an order under the Federal Arbitration Act vacating the arbitration award.

Dated: January 8, 2020                              Respectfully submitted,

XAVIER BECERRA
Attorney General of California
DAMON G. MCCLAIN
Supervising Deputy Attorney General


*/s/ William P. Buranich*
WILLIAM P. BURANICH
Deputy Attorney General
*Attorneys for Respondents California Department of Corrections and Rehabilitation Office of Internal Affairs, California Department of Corrections and Rehabilitation Office of the Ombudsman, California Attorney General Xavier Beccera, California Governor Gavin Newsom, and the Office of the Inspector General*

SF2019202913/21758044.docx

# CERTIFICATE OF SERVICE

Case Name:  *Eeon F.K.A. Brett Jones, et al. v. CDCR, et al.*   No.   **4:19-mc-80288-KAW**

I hereby certify that on January 8, 2020, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD**

**DECLARATION OF WILLIAM P. BURANICH IN SUPPORT OF RESPONDENTS' OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD**
**(With Exhibits A to Q)**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On January 8, 2020, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| **Eeon fka Brett Jones (BJ5840)**<br>**California Institution for Men**<br>**P.O. Box 368**<br>**Chino, CA  91708**<br>*In Pro Se* | **Eeon**<br>**304 S. Jones Blvd.**<br>**Ste. 1967**<br>**Las Vegas, NV 89107** |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on January 8, 2020, at San Francisco, California.

|  |  |
|---|---|
| E. Tornqvist | /s/ E. Tornqvist |
| Declarant | Signature |

SF2019202913
21766933.docx