THE UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

**RECEIVED**

APR 27 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

November 27, 2019

4:19-mc-80288-KAW

THE UNITED STATES FEDERAL DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Eeon F.K.A. Brett Jones & The Custody Class, et al …,

v.

California Department of Corrections and Rehabilitation, et al,
United States Attorney General, et al …,

**Nature of Proceedings:  Motion to Confirm Arbitration Award
Under 9 U.S.C. § 9**

Appeal Brief on Behalf of Appellant(s)
"Eeon" Brett Jones and the Custody Class
304 S. Jones Blvd. Ste. 1967
Las Vegas, Nevada 89107

Certificate as to Parties:  9 U.S.C. § 16

# **TABLE OF CONTENTS**

**Page(s)**

1.  Jurisdictional Statement ...................................................... 1 (a-j).

I.       Original Petition to the Court .............................................. 2.

II.      Limited Jurisdiction ........................................................ 5.

III.     Challenge to Jurisdiction .................................................. 7.

IV.      Motion to Confirm ......................................................... 8.

V.       A Legitimate Arbitration Association .................................... 9.

VI.      Unilateral Compelled Performance Contract ........................... 9.

VII.     Procedure's for Contesting Arbitration & Awards .................... 10.

VIII.    Never Consented to a Magistrate ....................................... 12.

IX.      Elements of Fraud not Evidenced by the Record ...................... 13.

X.       Presumption of Receipt of Mailing ..................................... 13.

XI.      Agreement Between the Parties and Default Equating to Assent ... 14.

XII.     Conclusion ................................................................. 15.

i.

# TABLE OF AUTHORITIES

**Cases**

*AT&T Technologies, Inc. v. Communications Workers*,
          475 U. S. 643, 649–650 (1986).

*Babier*,
     948 F.2d. 117, 121 (2nd Cir. 1991).

*Chicago v. New York*,
     37 F. Supp. 150.

*Godfrey v. United States*,
     997 F.2d 335, 338 (7th Cir. 1993).

*Hall*,
     552 US 576, 578.

*Hagner v. United States*,
     286 US 427, 430, 76 L.Ed. 861, 52 S.Ct. 417 (1932).

*In Re: FNB*
     152 F. 64.

*Joyce v. U.S.*,
     474 US 215; 102 F,.2d. 188.

*Latana v. Hopper*,
     102 F.2d 188 (1939).

*Main v. Thiboutot,*
    100 S.Ct. 2502; 495 F.2d 906, 910; 478 So.2d 368 (Fla. 2nd DCA 1985).

*Norwood v. Renfield,*
    34 S.Ct. 329; Exparte, et al, 49 P. 732.

*Perez v. Tilton, et al.,*
    No. CAL. No. C-05-5241

*Planters Bank, et al v. Bank of Georgia,*

*Schein, Inc., v. Archer & White Sales, Inc.,*
    586 US ___, 139 S. Ct. 524 (2019).

*Singh v. Raymond,*
    WL 11370123 (SDNY Mar. 28, 2014).

# GLOSSARY OF ABBREVIATIONS

Not Applicable

**JURISDICTIONAL STATEMENT**:

Jurisdiction

The United States Court of Appeals for the Federal Circuit, an Article III

Court of original jurisdiction, located at Washington, D.C., has exclusive

nationwide jurisdiction over a variety of subject matters, parties, person's, and/or

properties. `To include but not limited to "All government contract cases, all

government personnel cases, all cases involving monetary claims against the

United States …

As an Appellate Court, the United States Court of Appeals for the Federal

Circuit reviews final decisions made by a court under its jurisdiction.

The United States Court of Appeals for the Federal Circuit has jurisdiction

over the final decision of the United States District Court for the Northern District

of California, which entered a final decision and order on January 17, 2020 and on

February 07, 2020.

**Jurisdiction Over Federally Qualified Questions**

The Appellant brought forth the constitutional right to enter into

"commercial" contracts and the Clearfield Doctrine, and whether or not compelled

performance by act(s), action(s), performance, conduct, inaction(s), or forbearance are cognizable by the Federal Arbitration Act (Hereinafter "FAA" or "Act") and the Constitution of the United States; to be articulated further within the body of this presentment.

The Appellant and his FAA recognized contractual "class," The Custody Class; to be referenced throughout as T.C.C., do not consent to submitting to the courts jurisdiction unless and until such jurisdiction is proved to be "Article III (3)" of the United States Constitution, as such is a constitutional right and we must respectfully challenge the jurisdiction of the court and remind the court that under the 1st Amendment of the Constitution an appeal is governed via the Right to Redress and the Right to Petition Government – See:  U.S.C.A. § 1, 5 (Due Process Guarantee as the Secured Rights of the Constitution are property, possession's that may not be deprived of a party without due process).

**Assumption of Role of Judge:**

The Honorable 'Westmore' assuming "life tenure," acted as a judge in the matter 4:19-mc-80288-KAW, as a magistrate, acted in excess of his jurisdiction –

"The magistrate judges of this District have been designated to conduct any

and all proceedings in a civil case including a jury or nonjury trial and to

Page 1(a).

order the entry of a final judgment, **upon the consent of all parties**" – See: Consent to proceed before a United States Magistrate Judge or Declination to Proceed before a Magistrate Judge and Request for Reassignment to a United States District Judge, form and procedures governing.

In total and complete absence of the aforementioned, Judge Westmore "acted," with prejudicial old [judicial] hostility towards arbitration" (466 US 1, 14).

Westmore's consideration of a response by the Attorney for the Defendants, who were not in an official capacity, as the FAA documents commercial activity, business engagement and a waiving of sovereign immunity – *See*: Clearfield Doctrine & *Planters Bank, et al v. Bank of Georgia, et al* ..

Judge Westmore's conduct, unlawfully assuming the role of an Article III judge, leaves the court in want of jurisdiction, which permits and allows for the challenge of the courts jurisdiction.  See: 505 F.2d 1026; 415 US 533; 75 Ala. 268, 57; *In Re: FNB* 152 F. 64; 17 Kan. App. 2d. 573. 576-77, 840 P.2d 533; 252 Kan. 1096; 204 US 8, 27; *Joyce v. US*, 474 US 215; 102 F,.2d. 188; 37 F.Supp.150; *Main v. Thiboutot*, 100 S.Ct. 2502; 495 F.2d 906, 910; 478 So.2d 368 (Fla. 2nd

Page 1(b).

DCA 1985); 94 Ca.2d 751, 211 F.2d 389; 474 F.2d 215; 469 F.2d 416; *Norwood v. Renfield*, 34 S.Ct. 329; *Exparte, et al*, 49 P. 732.

If there can be any greater federal qualifying questions it is:

a. "What was the court's jurisdiction when "Westmore" choose to ignore the consent rule and act contrary to the FAA?"

b. "Does 9 U.S.C. § 12 permit any court other than the court for "the district within which the award was made," to vacate an arbitration award, beyond 'three months after the award is filed or delivered?'"

c. "Can the court consider "a motion to vacate, modify, or correct an award," either by an adverse party or upon its own motion after the "within three months after the award is filed or delivered," per the FAA's statutory text?

d. Does the FAA require a class action via contractual commercial agreement, note: "Or any other class of workers engaged in … commerce?" (FAA § 1).

e. "What is a valid arbitration association and proceeding as defined by the FAA § 5?  Note:  "In the agreement provisions be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such

Page 1(c).

method shall be followed…"

f.  "According to the evidence and the record the Sitcomm Arbitration Association only acted as process server and not in an arbitral capacity, when the court claimed that the award was issued by an association and not a single arbitrator, it erred and the foundation for such renders judgment void, is this not a reasonable conclusion?"

g.  "The claim of fraud must be proved by each of its five (5) elements as evidenced by the Federal Rules of Civil Procedure 9.  Was "Westmore" obligated to provide proof of fraud when she made such a claim as a third party?"

h.  "Once jurisdiction has been challenged, must it be proved and does the burden not shift to the court to prove jurisdictional points asserted?" *Latana v. Hopper*, 102 F.2d 188; *Chicago v. New York*, 37 F. Supp. 150.

i.  "Unilateral contracts," "Click & Slide," "Shrink Wrap," are compelled performance, requiring notice of agreement.  An act(s), action(s), performance, conduct, inaction(s), forbearance by a party.  According to magistrate Westmore, the unilateral contracts are not cognizable by the

Page 1(d).

FAA and the Respondent(s) admittance to receiving the contract, responding with a general response while having a duty to respond, then past grace period, rejecting the agreement does not permit arbitrator's review and action?

j. "Commercial business," *Planters Bank v. Bank of Georgia* stated that respondent(s) waived sovereign immunity when they failed to respond, perform while having a duty to respond, or waited until after the ninety (90) days statute of limitations to contest the award, or to file a response."

k. "[T]ypically an arbitrator need not explain their rational for an award" *Singh v. Raymond, et al.*,, No. 13 cv-1323, 2014 WL 11370123 (SDNY Mar. 28, 2014); *Babier, et al.*, 948 F.2d. 117, 121 (2nd Cir. 1991).  Did the court err when it claimed via presumption and accusation that "the "arbitration award" lacks any fact finding?"  Is there a provision of the FAA that requires the arbitrator to list anything other than the party defaulting, having a duty to respond, being in breach of the agreement the basis for rendering its decision?

**Statement of Issues:**

Page 1(e).

1. Contrary to Supreme Court precedent and the Federal Arbitration Act (FAA) 9 U.S.C. § 1-16, the federal district court has by its decision stated that:

    a. Courts can override a contract that delegates arbitrability questions to an arbitrator.

    b. Courts may enjoin a party (arbitration association) to a matter although the party played no active role in rendering any determination and served only as process server.

    c. The court entering a motion to vacate is not within the limits of the Act which requires "The United States Court in and for the District wherein the award was made may make an order vacating the award…" The Court acted without jurisdiction, in want of jurisdiction, prejudicially assuming a role not granted via statute, matter must be over-turned and the court venue must be questioned due to "the old [judicial] hostility towards arbitration, which documents conflict (FAA 9 U.S.C. § 10(a)).

    d. The Court failed to recognize the limits of the Act, which only permits the court to consider, if there is proof of fraud, proved by a party to the arbitration –(*Ibid*). In this instance, the court conducted a non-statutory investigation without an opportunity to challenge – "The Court finds that the invalid arbitration award by Sitcomm must be vacated." As stated Sitcomm

Page 1(f).

did not issue the award, a private arbitrator "Gibbs" issued the award as documented on the award, "Sitcomm does appear to be a valid entity of arbitration," while the contract and the Act documents the validity of the issuance of the award, 9 U.S.C. § 5.

e.  The Court stated, "the award issued by Sitcomm on the basis of procurement through fraud because the award did not "have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration."  The Court is adding to the exception's listed in the Act and has violated the rights of the parties by making "any determination on the merits the parties have agreed would be resolved exclusively by arbitration," *Henry Schein v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 586 US ____ (2019).

   i.  Note: "That when the parties to a contract assign a matter to arbitration (including the validity of award, which is listed in the contract of compelled performance), a court (Westmore) may not resolve the merits even if the court thinks ... the merits are frivolous'" *AT&T, et al.*, 475 US 679, 680 – "A court has no business weighing the merits of a grievance because the agreement is to submit all grievances to

Page 1(g).

arbitration, not merely those which the court will deem meritorious; Id. 650.

f. The Court permitted the Respondent(s) to enter the record dispute default, as twenty (20) days was extended to these private commercial corporations to respond on the 33rd day after service, in violation of the Act, the Rights of Due Process of the Plaintiff's and failed to allow time for Plaintiff to rebut response of Defendant(s) in violation of principles of due process, procedures.

**I. Background**

i. The parties entered into an administrative contract that resulted in a court committing the Plaintiff(s) to the custody via an agreement between two (2) separate branches of government (Note that the agreement with the parties is contained within the commitment & booking documents and processes).

a. By the nature of the Defendant – "the California Department of Corrections and Rehabilitation, et al.," a private for profit corporation, not a government corporation as "the prison industries Inc., et al.," engages exclusively in commerce and has no claim to sovereign immunity – I do hereby

Page 1(h).

incorporate by reference each of the Defendant(s) Comprehensive Annual

Financial Reports (C.A.F.R.'s) for the past twenty (20) years, inclusive of

references, notes, ledgers, and term definitions, which documents

application of the "Clearfield Doctrine."

ii.     It has been documented via "the Prison Law Group," assisting the

monitor's regarding "the Armstrong Class," of whom a settlement

agreement has been established, that the CDCR Staff stated, "we don't

care, sue us if you'd like."  This was construed as an attempt to change

the terms of the agreement, we conditionally accepted those change in

terms under our right to re-negotiate, re-contract, with a unilateral

performance and forbearance agreement, with a 10 to 20 calendar day

response requirement.  The CDCR responded yet their response was

general and non-specific; a condition of the agreement.  The CDCR

responded again, yet again, general non-specific and on the 22nd day the

CDCR rejected the agreement, yet outside the statute of limitations grace

period.  The fact that the Respondent(s)/Defendant(s) attempted to

respond three (3) times, documents knowledge and non-concealment

along with assent via performance.


Page 1(i).

iii.   The Defendant(s) failed to perform several key functions of the agreement, they were sent a notice of fault opportunity to cure and finally a notice of default intent to arbitrate.

iv.   Application was made to the arbitrator, an arbitrator who the agreement permitted to determine the merits and/or claims of the parties.

v.   The process server mailed via United States Postal Service a Notice of Arbitration Hearing, as CDCR expressly stated that they will not participated in the proceedings which was their choice, made without force or threat.  The hearing was held de novo and a judgement of default on contract was entered by the sole arbitrator, K. Gibbs.

vi.   The Plaintiff(s) continued to attempt to work with the Defendant(s) yet they were unwilling, retaliated, threatened life, safety and property of Plaintiff(s).  The within three (3) month period ordered by the Clerk to respond to the Motion to Confirm the Arbitration Award on December 27, 2019 also elapsed, Respondent(s)/Defendant(s) were time barred.

Page 1(j).

## I.   Original Petition to the Court

i.   "There is nothing malleable about "must grant," which unequivocally tells the courts to grant confirmation in all cases, except when one of the prescribed' exceptions applies.'" *Hall, et al.*, 552 US 576, 578; *Archer* (2019).

ii.   The Courts 'Westmore' assumes the role of arbitral tribunal, when attempting to criticize the arbitrator for doing only what the agreement permitted under the arbitration clause.  There was only one issue before the court – a motion to confirm arbitration award.

iii.   The Motion to Confirm was received by the court on December 06, 2019 over sixty (60) days after the award was served upon Respondent(s).  The Clerk ordered the Respondent(s)/Defendant(s) to respond by December 27, 2019 a twenty (20) day window and as with the grace period for rejecting arbitration clause, twenty (20) calendar days is a reasonable period of time for permitting a response.

iv.   Under normal circumstances, a party representing government would have sixty (60) days to respond, however; since the FAA evidences 'commercial business,' this automatically suspends any claim of

Page 2.

government representation.  The government cannot represent the private for profit corporations as it is prohibited via due process and equal protection clauses and other principles of law, such as the Clearfield Doctrine.

v.    None of the Defendant(s) responded prior to December 27, 2019 and it should be noted that only the related party, CDCR attempted to ever respond.

a.  The Court could not consider the response from the Respondent(s) as they were out of time, they did not ask for leave of obligation imposed by the court order for responding by December 27, 2019.  The Defendant(s) cannot disobey a court order (to include the order of an arbitrator who possesses the power of a judge/court respecting the parties to an FAA qualifying agreement).

vi.   On January 08, 2020 the Defendant, CDCR, the Governor of California filed a response in opposition to an arbitration award.  The court could not consider such a rebuttal, as it was clearly out of time, beyond the grace period and statute of limitations, the court erred when it allowed the time barred response and failed to allow rebuttal as required via due

Page 3.

process.

vii.    By the Court on January 17, 2020 acting under the authority of the FAA,
        attempted to vacate the award stating that it was procured through fraud
        and the award appeared to be invalid, without providing evidence or
        proof of invalidity was actionable and reprehensible.

a.  The Court produced evidence of some cases, where other judges of the
    district court violating the jurisdiction of the FAA whereby these courts
    vacated the award and the court was outside the district where the award was
    issued, contrary to 9 U.S.C. § 10(a), 12(a).  In fact each of the cases the
    court claimed to rely on were where the award challenged option was
    expired, 9 U.S.C. § 12(a).

b.  Each of the cases relied upon by the Courts "Westmore," were where the
    Court lacked jurisdiction to vacate the arbitration award, making that court's
    judgment, decree and final decision void.  See 9 U.S.C. § 10(a).

c.  "Westmore's" lack of experience and prejudicial intent is evident by the
    fact, she intentionally failed to follow normal protocol.  She denied
    Plaintiff(s) the right to rebut presumptive allegations of fraud, whereby
    alleged by her lacked a single element as prescribed by the Federal Rules of

Page 4.

Civil Procedure 9, which documents her role in the conspiracy against the organization known as Sitcomm Arbitration Association.

1. What constitutes a valid arbitration association under the FAA?

   Validity – "To qualify as a valid arbitration under the FAA, the arbitrator must consider the evidence and arguments from each party – advanced," 524 F.3d 1235, 1239 (11th Cir.).

d. The record establishes that notices were properly mailed via supportive declaration – once delivered to the post office, the Court must presume delivery." *Hagner*, 286 US 427, 430, 76 L.Ed. 861, 52 S.Ct. 417 (1932); *Godfrey*, 997 F.2d 335, 338 (7th Cir. 1993).

## II.   Limited Jurisdiction

i.   Presumably the court derives its power from the Constitution, a limited delegation of authority.  That limited delegatory authority respecting arbitration is further curtailed, note:

   "The FAA prescribes limited grounds under which a court may modify an arbitral award (9 U.S.C. § 11(a)-(c)).  'In enacting [the FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.  In

'Southland,' the court converted this dicta into controlling law in a case reviewing the actions of a state court… the court (Supreme Court of the United States), emphasized that the FAA must have been intended to control both state and federal courts or the FAA would have been inadequate to fulfill its two central purposes: "overcoming the old [judicial] hostility towards arbitration and addressing the failure of state arbitration statutes to mandate enforcement of arbitration agreements. The court therefore held that the FAA not only controls state and federal courts, it also preempts state law that would bar enforcement of an arbitration agreement." 40 US 1, 10, 24-27; 465 US 1, 10, 14, 24-25.

In Archer, the Supreme Court re-iterated what was then long-standing precedent, that a court must "interpret the Act as written and may not engraft its own exceptions as was done here, as such is inconsistent with the FAA (See: AT&T Communications, et al, 475 U.S. 679, 650.

"A court may not override the contract."

"A court may not resolve the merits."

"Even if the court thinks…"

The opinions of the courts relied, erroneously by 'Westmore' are worthless, non-sensical when we consider these judge's conspired

Page 6.

together to "protect themselves and their sister courts," from a process server, and compelled performance contracts.  The conspiracy's chief aim is to deny due process, cause injury, gatekeep and to conceal these unlawful under color of law acts for the unjust enrichment of their comrades, See: the "Addendum, Conspiracy Against Rights Claim Attached."

III.    **Challenge to the Courts Jurisdiction**:

i.      The Court acted without FAA implied or intended authority, the courts 'Westmore' acted without jurisdiction and has caused injury. The Court's 'Westmore' claimed that one had to apply for class certification while seeking a motion to confirm, combining arbitration with a civil litigation, so we ask from winst dost she get this authority?  The Plaintiff's established jurisdiction via the FAA and the titled caption of the "Motion to Confirm Award" – 9 U.S.C. § 9.

ii.     The court possessed no, absolutely no jurisdiction for vacatur of the award per the FAA as this can only be achieved in the district where the award was issued – 9 U.S.C. § 10(a), 12(a).

iii.    The Court listed the SAA as the organization that issued the

Page 7.

arbitration award rather than the third (3rd) party/neutral who was appointed as permissible via the contractual agreement between the parties.

Therefore, as a matter of right, a challenge to the jurisdiction of the court is hereby made.

IV.   **Motion to Confirm**:

i.     "If the parties in their agreement (see: Arbitration Clause) have agreed that a judgement of the court shall be entered upon an award made pursuant to the arbitration, and shall specify the court… there upon the court must grant such an order, unless the award is vacated (in "the District wherein the award was made," 9 U.S.C. § 10 (a))), modified or corrected as prescribed in Sections 10 and 11 of this (F.A.A. 9 U.S.C.) title, (see: F.A.A. 9 U.S.C. § 9).

ii.    By the text of the act specifying the very limits of a court, the law holds through precedent that "…the appropriate scope of judicial review is whether the award is an honest decision of the arbitrator, made within the scope of the arbitrator's power and that the court will not otherwise set aside an award for error wither in fact or in law.' 58 U.S. 344, 349, (1854); 116 S. Ct. 834, 835 (1995), 465 U.S. 1, 15, 16 (1984).

Page 8.

iii.    The Superior Law respecting 'A Motion to Confirm,' is well established, and it is the F.A.A.

V.    **A Legitimate Arbitration Association**:

i.    The legitimacy of an Arbitration Association is not a matter for the courts to determine per the contract and the F.A.A.  The court erred when it resorted to claiming "…does not appear to be a valid Arbitration Association," this was not the subject matter, not associated with the rendering of the award and not an exception listed under 9 U.S.C. § 9. *Ibid.*

VI.    **Unilateral Compelled Performance Contract.**

i.    A unilateral contract is one whereby one party signs and another party agrees by some act, act(s), action(s), inaction(s), and/or forbearance.  A party would also need to be obligated to respond, in the present matter; the California Department of Corrections & Rehabilitations, a.k.a. CDCR was obligated to respond under settlement forms of *Perez v. Tilton, et al.*, No. CAL. No. C-05-5241:

> "The settlement requires the California Department of Corrections…"
> "A federal judge has approved a settlement in the civil rights law suit about…"

Page 9.

Under the American's with Disabilities Act and the Settlement regarding

Armstrong and Clark Classes.

ii.     Have the Respondents confirmed and or performed under the terms of the

agreement? Yes, as determined by the Arbitrator, not only did they waive

all rights to contest award by failing to appear ay hearing to arbitrate,

they rejected the agreement after grace period, and were time barred.

a.  The fact that Respondents responded twice with a general non-specific

response, failing to supply information and/or proof of claims (showing of

cause), they responded eighteen (18) days beyond the statutory and agreed

upon time frame, as admitted into the records. This documents knowledge of

contract and intent.

b.  Any attempt to reject contract, timely or not, documents knowledge of legal

duty/obligation and under the principles of contract law, (Restatement of

Contracts, U.C.C. § 9 – 208, 209, 210.

## VII. Procedures for Contesting Arbitration Award

i.  Per the Federal Arbitration Act, 9 U.S.C. § 9, 10, 11, 12 & 16, there are only

very specific and limited grounds for contesting an arbitration award:

Page 10.

a.  § 9 – Procedure…

"If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award … made pursuant to the Arbitration and shall specify the court….any party to the arbitration may apply to the court so specified for an order confirming the award, and there upon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title…

b.  §10… vacating… (a) in any of the following cases the United States Court in and for the District wherein the award was made may make an order vacating the award upon application of any party to the arbitration….

c.  § 11. Modification or Correction… In either of the following cases the United States court in and for the District where the award was made may make an order modifying or correction the award upon application of any party to the arbitration…

d.  § 12… Motion to Vacate of Modify… A motion to vacate, modify or correct an award must be…within three months after the award s filed or delivered…

Page 11.

A review of the Title 9 U.S.C. § 9, 10, 11 and 12, reveals that the court is obligated to grant motion and order to confirm, if the award has not been by order upon application, vacated by the court in the jurisdiction wherein the award was issued. The District of California is not the District wherein the award was issues.  A review of the record records no order from the District wherein the award was issues, within either the three month statute of limitations or otherwise.

e.  16.  Appeals …(a) An appeal may be taken from – (1) an order – (E) Modifying, … vacating an award …

The Appeal Per Title 9 is Proper.

## VIII.  Never Consented to a Magistrate:

i.      § 9 of 9 U.S.C., specifies the procedure respecting a motion to confirm Arbitration Award, "United States Court," implies Legal Delegated Authority to Act, and at no time was there any willful intent to consent to a magistrate, nor will there ever be.

A.      The magistrate failing to strike Defendants opposition motion as untimely, and/or to allow rebuttal of opposition, amounted to an unfair and bias hearing denying due process respecting all parties, the Appellant's, the Defendant's and the

Page 12.

Public, as the matter is not concealed from the Public.

### X.    Elements of Fraud Not Evident by the Record:

i.    The law requires evidence of fraud, attempt to defraud to be proved on the record, the F.A.A., require a party to the Arbitration to bring forth such an applicational claim to the court, that they must prove not simply imply, on the record. Fraud has five (5) elements and if just one (1) element is lacking, no claim of fraud is capable of standing – see: Fed. R.C.U.  9(6).

ii.    In the Present matter, and in the matters referenced by the court in its void order, not one instance of all five (5) elements have ever been proved, no trial, no evidence, only the court, it's officers, agents conspiring to commit fraud, of which the Addendum that accompanies this presentment proves all five (5) elements of fraud and the four (4) elements of conspiracy.

### VI.    Presumption of Receipt of Mailing:

i.    The Defendant(s) claim they were never served any documents that the website of the U.S.P.S. did not evidence receipt.  However, the information from the U.S.P.S. website provided by Defendant/Appellant/Respondent, is neither verified, certified nor an accurate reflection of the facts, and the court despite the

Page 13.

time barrment of Respondents, further erred by not permitting hearing and

ii.      Opportunity to rebut the evidence that amounted to a violation of due

process, and misprision of felony.

## XII. Agreement between the Parties and Default Equating to Assent

i.      The law (Contract Law – Restatement of Contract (second) (third)) holds

that unilateral contract's that are founded on act(s), action(s), conduct,

performance, forbearance, or inactions, amount to assent if a part is aware

(notified), has notice to contract and has not timely rejected the Agreement. In the

present matter, the Defendant admits to having responded after receipt, and to not

timely rejecting the agreement as required by law.

ii.      The Respondent's failed to fully perform after assent, went into default

after notice, and yet they only claimed, "We did not receive notice," after

admitting they responded.

A. It is to be noted, that per the terms of the contract, the

Defendant's/Respondents/Appellee's waived right to notice and were given

notice as a due process courtesy, dispute waiver.

1. One can not possibly call foul, if the drive to the field, in uniform, sign in,

Page 14.

line up, stand at mound take a swing at a perfect slider and misses two time's and the third (3rd) time a perfect pitch straight up the middle and at that moment state, "We shall not participate any further," that is called a forfeit.

When the Respondent(s) admitted to receipt of the contract and responded generally and non-specifically (a condition of forbearance), twice and finally stating "we quit," by saying "we reject the offer," they are time barred by the Statute of Limitations, by eighteen (18) days. Then they made it clear in writing, "we will not participate in arbitration," this was a knowing, deliberate, and intentional waiver of right to notice.  So how could anyone who knowingly waives their rights later say, "We made a mistake, we never told anyone we misspoke but, we now say, we wanted to participate?  They by law, FAA, contract, and their own actions CAN'T.

## XIII. Conclusion:

1. "The Court "must confirm" the Award:"

i.    The Respondent Attorney General Representing five (5) of the Respondent/Appellee's, has stated that he never received notice, that the

Page 15.

USPS tracking # 9114 9014 9645 0431 0433 9887 54 and 9114 9014 9645 0433 9896 69 (see Exhibit B & C), system documented no such item.

a. Exhibit B, mailed on or about August 20, 2019 a Notice of Default, and Intent to Arbitrate.

b. Exhibit C, a Notice of Arbitration hearing dated September 11, 2019.

c. Exhibit D, a communication from CDCR-OIG, wherein they document "the Office of Inspector General (OIG) has received your correspondence. Specifics of the Performance Contract," again originally sent prior to August 10, 2019 permitting ten (10) calendar days to respond, and twenty (20) calendar days if written notice request is received timely.

1. The September 16, 2019 letter is beyond the statute of limitations and no attempt to reject the agreement by Respondent(s). This communication is a general letter, it does not speak as specifics of the performance contract, in fact the Respondents fully acknowledge receipt, yet they claim they only received his item and no other. They claim Exhibit C was never received, yet they respond specifically to the "Notice of Arbitration hearing", although claiming it was never received by them. The Respondents have attempted to

Page 16.

defraud the process.

d.  Exhibit F, a letter by Respondents in Response to Exhibit C, where in the Respondents Acknowledge "This letter is in Response to the Notice of Arbitration Hearing, you recently served upon the California Office of the Inspector General (OIG) regarding the above-mentioned matter – "Re: *EEON F.K.A. Brett Jones and The Custody Class (TCC), et al. v. California Department of Corrections and Rehabilitations, et al*."

1.  Note confirmation and admissions of receipt of "The Mere Delivery and Receipt of his "Conditional Acceptance Performance Contract, binding and irrevocable, couples with an interest." So why did the Court accept the "word" of Defendant while they provided proof to the contrary of no mailing of notice to any party, constituting an attempt to defraud?

2.  The Defendants could have raised all objections during Arbitration hearing before the Arbitrator, yet they "Accordingly, the OIG does not intend to participate in the Arbitration hearing set for September 30, 2019. This is a waiver of right to participate and such a notice is assent, performance with the agreement.

3.  This notice was sent four (4) days after the letter response to notice of default, well beyond the August 16, 2019 statute of limitation (Exhibit C

Page 17.

documents three (3) day notice of Fault Opportunity to Cure and Exhibit E, documents response to that notice).

4. The Respondents intentionally placed misleading unverified statements on the record, and the court blindly accepted these statements as fact simply because the Defendant(s) are represented by officers of the court. The Defendant highlights that they "merely received the contract,' and that that in and of itself did not equate to assent. Yet their performing, conduct, act's, action's, certainly does amount to assent. They per the Armstrong class, the Clack Class, the Perez class had a duty to respond, yet the contract prohibited a general non-specific response.

5. We further note that the Chief Counsel responded attempting to reject the agreement, because the original communications was received, yet by a clerk of the "Intake and Review Unit," an Agent of the Principle, notifications requirement satisfied when brought to the attention of the Chief Counsel he attempts to undo the damage caused by the failure to timely respond, and to attempt to evade obligation. However, we note, the Attorney General is not at this time making a claim of no service, no notice. That OIS makes no claim of no notice or service. Why, they can't as they already accepted service, receipt of contract!

Page 18.

i.   The Courts 'Westmore' did commit irreversible error by denying the Appellants their Due Process Right to access the Court by accepting the untimely response from Respondents, and then denying Appellants the right to rebut accusational claims.  It is standard practice to allow a response to rebuttal to Motion to Confirm. 'Westmore's' lack of experience with and familiarity with/to the FAA is what prevented her from recognizing that she was not the court of the district wherein the arbitration was issued.  There was no consent to a magistrate and no opportunity to choose a magistrate over or as opposed to a Article 3 Judge (see: 9 U.S.C. § 9, 10 (a), 12a).

ii.   Westmore, further exacerbates the process by ignoring the Right of Access to the Court, by failing to Acknowledge the Aforementioned, to enter the Default against the no responding parties (for if the Attorney General received copies of notifications, it must be presumed all other parties do as well, as each letter states it is in response to communication received), Westmore chose to ignore the motion to strike, and the challenge to the Courts Jurisdiction with respects a motion to vacate being brought only "in the district wherein the award was made," that District was not California.

Page 19.

Westmore, further ignored "the Statute of Limitation," of a motion to vacate... An award must be served... within three months after the award is filed or delivered. "Allowing a Motion to Vacate and then failing to follow the Act as written, by creating an additional exception, vacating an award because of a claim of fraud, which failed to State the particularities necessary to sustain a claim of fraud.

iii.  Despite the very limited authority, the Court expanded the authority it was delegated via the contract or Statute by throwing caution to the wind, acting in now an ongoing and malicious conspiracy against the Appellant, by claiming the Award was procured by fraud, that there was proof that Appellant attempted to conceal information from Respondents and the Court while relying upon no factual or actual evidence as prescribed in law.  This court appears to be a part of a conspiracy of the "court and our sister courts," relying on this group of wayward judicial officials, who have acted in the very same manner as this courts 'Westmore,' and the courts Joseph C. Spero, another Article IV Judge, whom no consent was ever granted in the matter of 20-mc-80046-JCS, has ordered the clerks as of February 20, 2020 to file a Motion to

Page 20.

Confirm as a civil matter (20-CV-01317-LB-Laurel Beeler another Magistrate unconsented party Article IV Judge) (See: Exhibit F).

iv. Each of the aforementioned occurring prior to the "Declaration of Nation Emergency" (see: October 16, 1917, Act; Pres. Proc. 203 March 9, 1933, Act; the National Emergency Act), to eliminate any claim as to reason behind the unlawful and conspiracy conduct.

a. This Judge Beeler attempts to extort monies from Appellants amounting to an unlawful tax, by demanding the paying of filing fees, which was already payed (paid), prior to order, as a motion to confirm award is a summary proceeding, not a litigation – "We affirm the Circuit Courts ruling that the counter claim could not be asserted in a summary proceeding to confirm an Arbitration Award...Actions to confirm an Award*** are straight forward proceedings in which no other claims are to be adjudicated...The federal Arbitration Act allows Arbitration to proceed with only a summary hearing with restricted inquiry into factual issues, "819 f. 2d. 373, 377 (2nd Cir. 1987, 902 f. 2d. 925, 932, (11th Cir. 1990).

b. This is why the Supreme Court stated that "there is nothing malleable about 'must grant,' which unequivocally tell the courts to grant confirmation un ALL cases, except when one of the 'prescribed' exceptions applies.'

Page 21.

*Hall, et al.*, 552, US, 576, 587 (2008); *Henry, et al...*, 586 US ___ 2019;

First, et al., 514 US 938, 943-944 (1995); 561 U.S. 63, 68-70 (2010);

    v.      We incorporate the Addendum and the documents filed by Plaintiff in

               this matter and the two referenced in V of this section by reference, to

               document elements of conspiracy, fraud, RICO, and unjust enrichment.

ix.    The opposition motion must be stricken as improper, untimely, and

inapplicable. The Order by the Court must be vacated as there was no consent to a

Magistrate, the Court must confirm the award, as the Defendants have proven

neither misconduct, fraud in all elements, nor have the proven a lack of service of

notification, as the record documents the Respondent's responded as a matter of

policy (Duty to Respond and APA Obligation) and course.

    A.  Noting that the Arbitrator has never personally been accused of acting

contrary to the F.A.A., or the delegation of authority by and between parties.

    B. The opposing party challenges contract as a whole by claim never agreed,

and the Supreme Court has consistently (in *First Option, Southland, Rent-a-*

*Center, AT & T Communications, Exxon Mobile*, and finally unanimously in *Henry*

Archer) held this involves "the Severability Doctrine" and when applied to

Arbitration, is a matter for the Arbitrator to decide. That is if the

opposing party's challenge is deemed timely filed after waiving sovereign immunity under commercial business application of the FAA and the Clearfield Doctrine – See: § 15 of 9 U.S.C.

The Court must act justly, in equity according to the text of the Act, and when the Act says, 'must confirm,' the Court cannot conspire, invent, create an exception, as that would make such an act voidable and non-judicial.

Petitioner attests and affirms the aforementioned information to be true and accurate this 04th day of April 2020.

Brett "Eeon" Jones, Petitioner

(Remainder of Page Left Intentionally Blank)

Page 23.

# EXHIBIT A

Case 3:19-mc-80288-CRB   Document 11   Filed 04/27/20   Page 40 of 59
Scott Kernan
March 26, 2020
Case 2:90-cv-00520-KJM-DB   Document 6559   Filed 04/01/20   Page 4 of 31

```
 1          Q.    For how long?

 2          A.    Approximately ten years.

 3          Q.    And do I remember correctly you were also at

 4     Sac for a while?

 5          A.    CSB Sacramento, yes, sir.  And Mule Creek State

 6     Prison.

 7          Q.    Both of those as wardens?

 8          A.    Yes, sir.

 9          Q.    And then you -- could you briefly describe the

10     positions you held at headquarters for me?

11          A.    Associate director.  Director.  Chief deputy

12     secretary.  Deputy director of Adult Institutions.

13     Under secretary of operations, and ultimately as

14     secretary from January 2016 to August 31, 2018.

15          Q.    So two and a half years.  Is that correct?

16          A.    Right around there, yes.

17          Q.    Okay.  And as secretary and possibly the

18     warden, but definitely as secretary, you were once

19     defendants in the Plata and Coleman case -- you were one

20     of the defendants in the Plata and Coleman cases.  Is

21     that correct?

22          A.    Yes.

23          Q.    And you and I have been on opposite sides of

24     litigation table, so to speak, for quite a while,

25     correct?
```

Case 3:19-mc-80288-CRB   Document 11   Filed 04/27/20   Page 41 of 59
Scott Kernan
March 26, 2020
Case 2:90-cv-00520-KJM-DB   Document 6559   Filed 04/01/20   Page 5 of 31

1   preserving objections here.  It's an incomplete

2   hypothetical, and it calls for speculation.

3        You can answer the question, Mr. Kernan.  I

4   don't need to tell you that.  You can do what you want.

5   I apologize.  Thank you.

6        THE WITNESS:  I think the mass humanity in the

7   dormitories and the lack of physical space presents a

8   particular problem during this crisis, if that answers

9   your question, Mr. Specter.

10        MR. SPECTER:

11        Q.   Could you elaborate, please -- elaborate on the

12   gravity of the crisis?

13        A.   The physical space in the prisons prevent

14   appropriate social distancing.  Shared bathroom

15   communals, laundry that is, you know, washed once a

16   week.

17        There's significant concerns in my mind of the

18   ability to prevent and mitigate the spread of disease

19   that undoubtedly in my mind will go through the prisons

20   given the -- you know, the close quarters that inmates

21   must live in.

22        Q.   In a radio interview with KQED, do you refer to

23   the situation in the prisons as "tinderbox"?  First of

24   all, did you -- did I accurately quote you from that

25   interview?

1        A.    Yes, sir.

2        Q.    And could you describe what you mean by that?

3        A.    I think I was -- even as inartful as it was, it

4    was not meant to be salacious.   It was simply meant to

5    suggest to the person I was talking to the gravity of

6    the situation in our state prisons and jails given the

7    COVID-19 virus.

8              My experience with other contagions over the

9    years, that is that the prisons are a prime location for

10   the spread of that.   And my concern that it will take

11   off like it is in New York and it's down in some of the

12   other countries -- that it will take off in the prisons

13   and create a significant health concern for the

14   offenders that we care for and the staff that work

15   there.

16       Q.    When you say "significant health concern," do

17   you include possibly death in that scenario?

18       A.    I -- I have to believe, given the aging

19   population in the prison system and those with other

20   healthcare issues, that the risk is heightened in the

21   prison setting versus the community setting.

22       Q.    You -- you understand that there have been

23   certain cruise ships that have had passengers with the

24   virus, correct?

25       A.    Yes, sir.

1    Q.    Do you have particular concerns about the risk

2    to that population?

3    A.    I guess I would say given my knowledge of the

4    COVID virus and the news reports that are going on is

5    that this is a highly, highly contagious disease.   That

6    we've already identified, as you have pointed out, you

7    know, one inmate and nine staff.

8         I think it's not -- if it's going to happen.

9    It's when it's going to happen that they're going to

10   have considerable more cases given the close proximity

11   of the inmate population as -- as we are describing in

12   these dorms across the system.

13   Q.    Do the dorms present a -- in your mind, do the

14   dorms present a greater risk than other types of housing

15   units that they have in CDCR?

16   A.    Well, I mean, I think all inmates, even inmates

17   in cells that are, you know -- having to go to chow

18   halls or do other -- pill call or what have you, where

19   they're in close proximity to other inmates present a

20   greater level of risk.

21        And I say that with just based on my

22   experience, not based on any expert knowledge of it.   It

23   just strikes me that as Americans are being asked to

24   stay six feet apart that, you know, placing the bunks

25   and the dorms that I dealt with were very much closer

Case 3:19-mc-80288-CRB   Document 11   Filed 04/27/20   Page 44 of 59
Scott Kernan
Case 2:90-cv-00520-KJM-DB   Document 6559   Filed 04/01/20   Page 8 of 31
March 26, 2020

 1    than that.

 2              They share communal bathrooms. You have got to

 3    believe that the social distancing is almost impossible

 4    for most of those inmates and the tight quarters only

 5    exacerbate the problem.

 6         Q.    In your opinion, tight quarters -- well, you

 7    understand that in many institutions, prisoners are fed

 8    in dining rooms, general dining rooms, where they

 9    congregate, correct?

10         A.    Yes, sir.

11         Q.    And they sit at tables with about four stools

12    apiece?

13         A.    Yes, sir.

14         Q.    And those are less than six feet apart from

15    each other, are they not?

16         A.    Yes, sir.

17         Q.    Are you concerned about the transmission of the

18    disease in that area as well?

19         A.    You know, yes is the direct answer.  And, you

20    know, concerned with all my colleagues that are working

21    those prisons.  I mean, I think it's a bad situation for

22    both.

23         Q.    So you're concerned that the staff have no way

24    to keep social distance in that current condition as

25    well.  Is that correct?

1          You can answer.

2          THE WITNESS:  I'm sorry, Mr. Specter.  Would

3     you please repeat that.

4          MR. SPECTER:  I don't think I can.

5          (Record read.)

6          MR. MELLO:  Same objection so as not to

7     sidetrack you, Mr. Kernan.

8          THE WITNESS:  I guess the most responsive

9     answer is I just don't know, Don.  I -- I worry about

10    the time that is elapsing and what we're seeing, you

11    know, as this is coming across the country and

12    flattening the curve and all the things that are going

13    on the news; that decisions are being made now might

14    mitigate it two weeks from now.

15          But I -- again, with all directness, do not

16    know what the department is doing internally today to

17    mitigate the population issues across the system.

18          MR. SPECTER:

19     Q.    Secretary Kernan, do you believe that immediate

20    steps are warranted to reduce the population or spread

21    the population out in some way in order to reduce the

22    risk of harm?

23          MR. MELLO:  Same objections.

24          THE WITNESS:  I do, sir.  I think it's common

25    sense that we should be taking immediate, bold steps to

Scott Kernan
March 26, 2020

1   try to mitigate the spread of the virus in the prisons.

2   And for that matter, in jails across the country.

3        MR. SPECTER:

4        Q.   And to your knowledge, and I understand this is

5   to your knowledge, it's not -- I understand that the

6   department may be doing things that you don't know

7   about, but to your knowledge, do you know about the --

8   do you know of any immediate and bold steps other than

9   the one that -- the ones that were contained in the

10  governor's executive order?

11       A.   I -- I think that logistically the department

12  has taken a number of steps to try to mitigate that; the

13  screening of staff coming into the facility, the taking

14  of temperatures, and questioning.  It seems like a

15  reasonable step to me.

16       The closing of programs, the closing of

17  visiting all of those things that the department has

18  done seem to me to be reasonable steps to try to

19  mitigate the problem.

20       And then it just becomes a question, and again,

21  admittedly don't know, are they spreading people out

22  either through using the full capacity that they have,

23  considering releasing offenders that are soon to be

24  released, and addressing those people that are immune

25  comprised and might be in greater jeopardy than the rest

1      thousands of inmates without someplace to go in the

2      community, you know, a residence or other location and

3      without the appropriate support, is a dangerous thing.

4           So I don't think that what they're dealing with

5      is very easy, Mr. Specter, but I do think that reducing

6      the density is a very common sense in-the-moment kind of

7      issue.  And I'm hopeful that the governor and the

8      secretary are going to do that.

9           MR. SPECTER:

10     Q.    Okay.  You understand that people are released

11     on parole from the CDCR every day or every workday at

12     least, correct?

13     A.    Yes, sir.

14     Q.    And the latest figures I have were that they're

15     about -- in 2018, I believe, 38,000 some-odd people were

16     released from prison.  Is that around the number that

17     you have experienced while you were there?

18     A.    Well, when I was there, it got up to a hundred

19     thousand a year because of parole violations and

20     different aspects of the criminal justice system.  But

21     that sounds about right as I understand the current

22     parole numbers.

23     Q.    Right.  And you understand also that some of

24     those people -- some of those people are sentenced to

25     determinate terms, correct?

Case 3:19-mc-80288-CRB    Document 11    Filed 04/27/20    Page 48 of 59
Scott Kernan
March 26, 2020
Case 2:90-cv-00520-KJM-DB    Document 6559    Filed 04/01/20    Page 12 of 31

1       A.    Yes, sir.

2       Q.    And so when their parole day comes, they're

3   released regardless of whether they have parole plans in

4   place, correct?

5       A.    Yes, sir.

6       Q.    In terms of if you were recommending reduction

7   in the population of the -- well, strike that.

8            In your opinion, if -- there was a need to

9   reduce the population, and I think you may have said

10  this already, but do you agree that releasing people who

11  are going to be released anyway in the next six months

12  or a year is a reasonable group to look at in terms of

13  the population?

14           MR. MELLO:  "Reasonable" is vague.  It's an

15  incomplete hypothetical.  Calls for speculation.

16           THE WITNESS:  I -- I would say yes to that,

17  Mr. Specter.  I guess with the caveat that I understand

18  the balance that the governor and the secretary have in

19  protecting public safety in that just releasing people

20  is a challenging political thing.

21           I guess I would just say that this virus

22  strikes me as something that we've never dealt with

23  before.  It's scary.  Staff are scared, extra scared.

24  And I think that -- and hope that the governor will do

25  something to reduce the density in that prison

Case 3:19-mc-80288-CRB   Document 11   Filed 04/27/20   Page 49 of 59
Scott Kernan
March 26, 2020
Case 2:90-cv-00520-KJM-DB   Document 6559   Filed 04/01/20   Page 13 of 31

1    healthcare providers in community that it is even more

2    likely individuals will have less access to sufficient

3    medical and mental health services upon their early

4    release from DCR prisons?

5        A.    I think the obvious to that is yes, sir.

6        Q.    In the KQED article that Mr. Specter asked you

7    about, I believe there's a quote.  It says "it's a

8    tinderbox of potential infection as you go forward,

9    especially if you were just watching what's going on

10   around the world.  I know Italy and Brazil had serious

11   violence and escapes and murders in jails as a result of

12   COVID-19."

13       Does that sound like something you said to the

14   reporter from KQED?

15       A.    Yes, sir.

16       Q.    Okay.  Do you think CDCR's prisons are

17   comparable to jails in Brazil?

18       MR. SPECTER:  Vague as to "comparable."

19       THE WITNESS:  I don't know if I would say

20   they're comparable, Mr. Mello.  I would just say that --

21   you know, as it relates to confined quarters, there's

22   some general consistencies in any detention facility no

23   matter where it is in the world that are consistent with

24   -- you know, the same kind of things we deal with here

25   in California.

Scott Kernan
March 26, 2020

1    entire question.  Could you repeat it?

2        Q.   I'm sorry.  Maybe I should go about this a

3    different way.  In the best of all possible worlds,

4    everybody coming out of prison would have a parole plan

5    that applies for their medical and mental health needs

6    as well as their housing needs, right?

7        A.   Yes.

8        Q.   That doesn't happen in today's prison system in

9    California, correct?

10       A.   Not for everybody, no.

11       Q.   But they're still released, correct?

12       A.   Yes.

13       Q.   And people are still released even though they

14   may have HIV or other contagious diseases, correct?

15       A.   Yes.

16       Q.   Regardless of whether they have a parole plan

17   or not, correct?

18       A.   Yes.

19       Q.   That's all I have, Paul.

20            MR. MELLO:  I have nothing further.  Madame

21   court reporter, I will try to get you those

22   declarations, those exhibits.

23            And I thank Mr. Kernan for his time.

24            We definitely want a transcript.

25            Don, you're picking that up?

# EXHIBIT B

**EXHIBIT C**

**SITCOMM ARBITRATION ASSOCIATION**
**1001 South White Oak Road**
**White Oak, Texas**
**+ 1 (877) 631-1722**

Website: saalimited.com                                    Email: support@saalimited.com

# ALL-PURPOSE PROOF OF SERVICE

I,  __SITCOMM ARBITRATION ASSOCIATION__, being at or above the age of 18, of

the majority and not a party to the action, a citizen of the United States of America, did mail the

document entitled:                        **Conditional Acceptance & Notice of Default**

by placing it in an envelope addressed to: <u>Name and address:</u>

California Department of Corrections and Rehabilitation
Office of the Ombudsman
1515 S Street
Sacramento, California 95811
U.S.P.S. Tracking 9114 9014 9645 0433 9887 54

Office of the Inspector General
10111 Old Placerville Road, Suite 110
Sacramento, California 95827
U.S.P.S. Tracking 9114 9014 9645 0433 9887 92

Judicial Council of California
455 Golden Gate Avenue
San Francisco, California 94102
U.S.P.S. Tracking 9114 9014 9645 0433 9887 61

Attorney General William Barr
United States Department of Justice
950 Pennsylvania Avenue
Washington, D.C. 20530
U.S.P.S. Tracking 9114 9014 9645 0433 9888 08

Attorney General Xavier Becerra
California Department of Justice
P.O. Box 944255
Sacramento, California 94244-2550
U.S.P.S. Tracking 9114 9014 9645 0433 9887 78

Superior Court of California at Monterey
Appellate Division - Felony
240 Church Street
Salinas, California 93901
U.S.P.S. Tracking 9114 9014 9645 0433 9888 15

Office of California Governor
Governor Gavin Newsom
1303 10th Street, Suite 1173
Sacramento, California 95814
U.S.P.S. Tracking 9114 9014 9645 0433 9887 85

Affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local dropbox guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day August 21, 2019.

THE SITCOMM ARBITRATION ASSOCIATION

# EXHIBIT D

## ALL-PURPOSE PROOF OF SERVICE

I, SITCOMM ARBITRATION ASSOCIATION, being at or above the age of 18, of the majority and not a party to the action, a citizen of the United States of America, did mail the document entitled: NOTICE OF ARBITRATION HEARING by placing it in an envelope addressed to: Name and address: Page | 2

California Department of Corrections and Rehabilitation
Office of the Ombudsman
1515 S Street
Sacramento, California 95811        U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 38

California Department of Corrections and Rehabilitation
Office of Internal Affairs
P.O. Box 3009
Sacramento, California 95812        U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 45

Judicial Council of California
455 Golden Gate Avenue
San Francisco, California 94102      U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 52

Attorney General Xavier Becerra
California Department of Justice
P.O. Box 944255
Sacramento, California 94244-2550    U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 69

Office of California Governor
Governor Gavin Newsom
1303 10th Street, Suite 1173
Sacramento, California 95814         U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 76

Office of the Inspector General
10111 Old Placerville Road, Suite 110
Sacramento, California 95827         U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 83

Attorney General William Barr
United States Department of Justice
950 Pennsylvania Avenue
Washington, D.C. 20530               U.S.P.S. Tracking Number 9114 9014 9645 0433 9896 90

Superior Court of California
Appellate Division - Felony
240 Church Street
Salinas, California 93901            U.S.P.S. Tracking Number 9114 9014 9645 0433 9897 06

Affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local dropbox guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day September 11, 2019.

THE SITCOMM ARBITRATION ASSOCIATION

# EXHIBIT E

Brett Jones, BJ5840
September 16, 2019
Page 2

Please note, you must appeal the cancelation within 30 days of the issuance of the CDCR Form 695 (Screening For: CDCR Form 602 Inmate/Parolee Appeals).



In the future, regarding concerns with appeal issues submitted to our office, please include copies of supporting documents such as copies of submitted CDCR Form 602 appeal form and/or CDCR Form 22, if applicable. Also, do not send us originals, as we will not be able to return them.

Only after a decision has been rendered by the third level of review, if you believe the CDCR failed to appropriately address your concerns, you may choose to resubmit your complaint to this office.

The OIG cannot act in the role of attorney, nor can we provide legal advice or assistance. If you need legal research, advice, or representation, we suggest you consult a private attorney to directly represent your interests.  As an alternative, you may wish to contact an advocacy or public-interest law group, a few of which are listed below:

Legal Services for Prisoners with Children
1540 Market Street
Suite 490
San Francisco, CA  94102

Prison Law Office
General Delivery
San Quentin, CA  94964

Prison Activist Resource Center (PARC)
P.O. Box 70447
Oakland, CA  94612

Thank you for bringing your concerns to our attention.

INTAKE AND REVIEW UNIT
Office of the Inspector General

ML : 19-0030987-PI



STATE of CALIFORNIA

**OIG** | OFFICE of the
INSPECTOR GENERAL

*Roy W. Wesley, Inspector General*
*Bryan B. Beyer, Chief Deputy Inspector General*

Independent Prison Oversight

September 16, 2019

*Regional Offices*

*Sacramento*
*Bakersfield*
*Rancho Cucamonga*

Brett Jones, BJ5840
California Institution for Men
Facility A
P.O. Box 368
Chino, CA 91708

Dear Brett Jones,

The Office of the Inspector General (OIG) has received your correspondence regarding, "Conditional Acceptance Performance Contract."

The OIG is an independent State of California government agency established by law. Our primary responsibility is the independent oversight of California's youth and adult correctional agencies, including the California Department of Corrections and Rehabilitation (CDCR), the Board of Parole Hearings, and the Prison Industry Authority. As part of our statutory mandates, the OIG oversees the internal affairs investigations and employee disciplinary process of the CDCR, monitors CDCR's use-of-force review process, and conducts reviews of CDCR's policies, practices, and procedures. The OIG is not an investigative agency and does not pursue legal action on behalf of inmates.

Further, before this office will consider taking any action on your concerns, you must first demonstrate your attempts to obtain resolution to your issues by completing the formal administrative process with the CDCR, such as filing a CDCR Form 22, CDCR 602 Inmate/Parolee Appeal, or CDCR 1824 Request for Reasonable Accommodation.

A Duty to respond —

We encourage you to utilize available administrative grievance remedies until you have received a final decision by the third level of review. If your appeal was screened out in the last 30 days, we recommend you follow the instructions provided by appeals staff and resubmit your appeal to the appeals office. If you wish to do so, you may use a CDCR Form 22 as a receipt when submitting your CDCR Form 602 appeal to institutional staff. Please contact your correctional counselor for advice and assistance regarding questions about the process or the status of your appeal/grievance.

If your appeal has been cancelled, and you dispute the reasons for cancelling your appeal, you may file a new appeal disputing the appeal coordinator's reasons for cancelation, explaining why the cancelation was improper or why the appeal should have been processed. You should attach the original appeal and the cancelation notice with any documentation supporting your claim that the appeal was improperly rejected, and submit the whole package to the appeals coordinator.

*Gavin Newsom, Governor*



10111 Old Placerville Road, Suite 110
Sacramento, California 95827
Telephone: (916) 255-1102
www.oig.ca.gov

## Certificate of Service

I,   Brett "Eeon" Jones, being at or above the age of 18, of the age of the majority and a citizen of the United States of America, did mail this written request by placing it in an envelope addressed to: Name and address:

United States Court of Appeals
For the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439-0001  U.S.P.S. Tracking #: 9405511699000876843803

United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102-3661 U.S.P.S. Tracking #: 9405511699000876846910

Affixing the proper postage and depositing it with the local postal carrier, also being of the age of the majority, and not a party to this action who upon receipt guarantees delivery as addressed and/or local drop box guaranteeing the same as prescribed in law. If called upon I provide this sworn testimony based on first-hand knowledge of the aforementioned events attesting and ascribing to these facts on this day April 03, 2020.

/s/ Brett "Eeon" Jones